UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MABEL E. CHISHOLM, | : |
| Plaintiff, | : |
| v. | : |
| | : NO. 3:06 CV 1958 (MRK) |
| UNITED OF OMAHA LIFE INSURANCE COMPANY, et al., | : |
| Defendants. | : |

# MEMORANDUM OF DECISION

Plaintiff Mabel Chisholm filed this action *pro se* on December 5, 2006. Her Complaint names as defendants the United of Omaha Life Insurance Company ("United"), Compl. [doc. # 1-2][1] and the State of Connecticut, Department of Social Services ("DSS"), which administers Connecticut's Medicaid program, Compl. [doc. # 1-3], as required by Connecticut General Statutes § 17b-2. As against United, Ms. Chisholm asserts various tort claims including conspiracy, and invasion of privacy, as well as insurance, health care, mail and wire fraud. She also alleges "racketeering," which the Court will construe as a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c). *See Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (holding that courts should liberally construe *pro se* pleadings). Finally, Ms. Chisholm alleges that United violated her federal constitutional rights and the Freedom of Information Act (FOIA). Although Ms. Chisholm does not say so, this Court construes her constitutional claims as having been brought under 42 U.S.C. § 1983, and her FOIA claims as arising under the Connecticut Freedom and Information Act, Conn. Gen. Stat. § 1-200 *et seq.*, since the

---

[1] Although Defendants combine Ms. Chisholm's complaint papers for the purposes of page numbering, the Court will cite to the documents and pages as they appear on the docket sheet for ease of reference.

federal Freedom of Information Act, 5 U.S.C. § 552, applies only to federal agencies. *See Grand Cent. P'ship v. Cuomo,* 166 F.3d 473, 484 (2d Cir. 1999). As against DSS, Ms. Chisholm asserts similar tort claims – specifically, abuse, neglect, cruelty, reckless endangerment, and conspiracy, as well as insurance, health care, mail and wire fraud. She also alleges violations of her federal constitutional rights, the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and Connecticut's FOIA.[2] Ms. Chisholm seeks money damages from both defendants. Compl. [doc. # 1- 2] at 14; [doc. # 1-3] at 20.[3]

On February 2, 2007, United and DSS moved to dismiss Ms. Chisholm's Complaint. *See* Motions to Dismiss [docs. ## 22, 23]. Following briefing, on May 10, 2007, this Court granted Ms. Chisholm's Motion to Appoint Counsel, *see* Order [doc. # 50], and her appointed counsel filed a Notice of Appearance [doc. # 55] on May 29, 2007. On June 7, 2007, the Court denied without

---

[2] Ms. Chisholm asserted her claims under the entire Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*. The Act encompasses discrimination in voter registration (Title I), in public accommodations operated by private entities (Title II), in access to public facilities by state and municipal governments (Title III), in schools (Title IV), by government agencies that receive federal funding on the basis of race, color or national origin (Title VI), and in employment (Title VII). Given that Ms. Chisholm's claim relates to DSS's alleged failure to provide her with services, the Court will construe Ms. Chisholm's Complaint as asserting a claim pursuant to Title VI, 42 U.S.C. § 2000d. *See Davis*, 320 F.3d at 352.

Ms. Chisholm also asserted a generalized claim under Titles I-IV of the Americans with Disabilities Act, 42 U.S.C. § 121101 *et seq*. The ADA encompasses discrimination in employment (Title I), public services (Title II), and public accommodations and services operated by private entities (Title III); the Act also has a miscellaneous provision (Title IV). Given Ms. Chisholm's allegations, the Court construes Ms. Chisholm's ADA claims as being brought under Title II. (Title IV is not applicable because none of its provisions apply to DSS.) *See Davis*, 320 F.3d at 352.

[3] In her responses to Defendants' Motions to Dismiss [docs. ## 32, 33], Ms. Chisholm sought to introduce additional claims including allegations of deprivations of freedom of speech and the press. However, the Court will not consider those claims because Ms. Chisholm was given the opportunity – with appointed counsel – to file an amended complaint, but she did not do so, apparently electing to stand on the allegations and claims of her original Complaint.

prejudice Defendants' Motions to Dismiss [docs. ## 22, 23] to allow Ms. Chisholm an opportunity to file an amended complaint in response to the motions to dismiss. Ms. Chisholm did not file an amended complaint. As a consequence, on July 23 and 24, 2007, Defendants filed Renewed Motions to Dismiss [docs. ## 59, 61] incorporating their earlier Motions to Dismiss [docs. ## 22, 23].[4] For the following reasons, the Court GRANTS Defendants' Motions to Dismiss.

## I.

As a preliminary matter, although the parties do not address the jurisdictional basis for Ms. Chisholm's lawsuit, the Court must do so. Perhaps understandably, Ms. Chisholm's *pro se* Complaint does not specify whether subject matter jurisdiction exists under the diversity statute, 28 U.S.C. § 1332, because United is an out-of-state corporation, or whether she bases jurisdiction on the presence of a federal question under 28 U.S.C. § 1331. Diversity jurisdiction is not available in this case, because DSS, a state agency, is not a "person" for purposes of diversity jurisdiction, and the presence of DSS therefore destroys complete diversity. *See Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894) ("[I]t is well settled that a suit between a state and a citizen . . . of another state is not between citizens of different states . . . ."); *Wilkerson v. Mo. Dep't of Mental Health*, 279 F. Supp. 2d 1079, 1080 (E.D. Mo. 2003) ("The inclusion of a Missouri state agency as a defendant . . . destroys the required diversity of citizenship."); *Batton v. Ga. Gulf*, 261 F. Supp. 2d 575, 581 (M.D. La. 2003) (holding that presence of State of Louisiana destroyed complete diversity in lawsuit brought by citizens of Louisiana against Louisiana Department of Health and Hospitals, a

---

[4] On September 6, 2007, United sought dismissal arguing that Ms. Chisholm failed to respond to interrogatories. *See* Notice of Partial Non-Compliance [doc. # 68]. Because the Court dismisses Ms. Chisholm's claims on other grounds, it denies this motion as moot. On September 26, 2007, DSS filed a Second Renewed Motion to Dismiss [doc. # 69] and United filed a Motion to Dismiss [doc. # 70] raising identical issues and incorporating their previous motions.

non-independent state agency, and various out-of-state manufacturers); *accord Tomback v. UNUM Provident Corp.*, No. C 05-3157 CW, 2005 WL 2596449, at *3 (N.D. Cal. 2003); *Jakoubek v. Fortis Benefits Ins. Co.*, 301 F. Supp. 2d 1045, 1049 (D. Neb. 2003). *See also Long v. District of Columbia*, 820 F.2d 409, 416 (D.C. Cir. 1987) (holding that absent dismissal of District of Columbia as a "noncitizen" and therefore nondiverse defendant, federal diversity jurisdiction would be lacking in suit against a diverse co-defendant); *Ogden Dunes v. Bethlehem Steel Corp.*, 996 F. Supp. 850, 853 (N.D. Ind. 1998) (holding that no federal jurisdiction existed over co-defendant steel companies where joinder of state agency as defendant destroyed complete diversity). However, Ms. Chisholm does assert federal question claims against each Defendant. Therefore, 28 U.S.C. § 1331 provides the Court with subject matter jurisdiction to consider her federal claims, and 28 U.S.C. § 1367 permits the Court to exercise supplemental jurisdiction over her related state law claims. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 392 (2d Cir. 2007).[5]

## II.

On a motion to dismiss, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of" Ms. Chisholm. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see Desiano v. Warner-Lambert Co.*,

---

[5] The Court recognizes that the Second Circuit has advised district courts that "'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). However, the extent to which Ms. Chisholm's federal and state claims appear to be intertwined and considerations of economy, convenience and fairness to Ms. Chisholm, all counsel the Court to provide her with a response to her claims. In short, this is not the "usual case," and therefore, the Court chooses in its discretion to exercise supplemental jurisdiction over Ms. Chisholm's state law claims.

326 F.3d 339, 347 (2d Cir. 2003). The Court will briefly recite the facts here and discuss them further in the course of assessing each of Ms. Chisholm's claims.

Until 2001, Ms. Chisholm was a recipient of Medicaid benefits, a program administered by DSS; she also had a life insurance policy with United. Ms. Chisholm alleges that on March 14, 2001, two unnamed employees of the State of Connecticut came to her home to discuss her Medicaid benefits. Compl. [doc. 1-2] at 6. These individuals informed Ms. Chisholm that her benefits would be terminated if she did not liquidate and spend her United life insurance policy. *Id.* In response to this conversation, Ms. Chisholm contacted United and asked the Company to liquidate her policy. Soon thereafter, Ms. Chisholm received a check for $6,816.81, which according to her was approximately one-half the $11,845.00 value of her policy. *Id.* at 6-7. Upon receiving the check for $6,816.81, Ms. Chisholm attempted, but failed, to get an explanation from United regarding what she believed was a shortfall in the amounts owed her. *Id.* at 6-7. Ms. Chisholm says that she asked a private attorney to call United and the Company supposedly informed her attorney that United had sent Ms. Chisholm a check in the amount of $12,250.50. *Id.* Ms. Chisholm complains that United refuses to talk to her and has yet to pay the balance of her life insurance policy. *Id.* In addition, she alleges that United denied her all policy benefits from a separate disability policy she had with the company. *Id.*

Ms. Chisholm also complains that on March 24, 2001, DSS terminated her Medicaid benefits, leaving her without medical care or assistance with paying her medical bills. Compl. [doc. # 1-3] at 10. She states that she is sick and disabled and requires the assistance of a nurse. Nonetheless, she alleges, DSS refuses to give her a nurse or a social worker. *Id.* at 6-7. She asserts that because she is unable to pay for and use medication, she is susceptible to infections that

are related to her medical conditions. *Id.* at 7. Ms. Chisholm also alleges that DSS failed to provide her with information regarding her policy, including a copy of her health insurance policy. She states that DSS provided her with a card (presumably, prior to 2001), but the card is of no use and is rejected whenever she attempts to make use of it. *Id.* at 6-7.[6]

### III.

The Court sympathizes with Ms. Chisholm's difficulties and concerns, which is why the Court appointed counsel for her in the hope that she might get help in obtaining the medical assistance she apparently needs. Unfortunately, however, virtually all of Ms. Chisholm's claims against United and DSS are barred by the relevant statutes of limitations. Accordingly, the Court need not and does not reach the many other asserted grounds for dismissal, including sovereign immunity,[7] advanced by Defendants.

---

[6] Ms. Chisholm also states that on December 20, 2005, she contacted her bank to get a copy of the $6,816.81 check she had deposited into her account on June 12, 2001 as well as the bank record reflecting her premium payments to United. *Id.* at 11. According to Ms. Chisholm, the bank refused to give her this information, *id.*, but subsequently charged her $75 even though she has yet to receive the requested documentation. Compl. [doc. # 1-2] at 8. Ms. Chisholm also alleges that on February 13, 2006, the police visited her home to investigate this matter. Compl. [doc. # 1-3] at 12. In her pleadings, Ms. Chisholm appears to make claims against the unnamed bank for bank fraud and conspiracy, but she never included the bank as a defendant and therefore the Court does not consider any claims against Ms. Chisholm's bank.

[7] The Court notes that there is a substantial question whether Ms. Chisholm can sue DSS, a state agency, under Title II. *United States v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."); *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001) (holding that a private suit for money damages under Title II of the ADA may only be maintained against a state if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability); *Mutts v. S. Conn. State Univ.*, No. 3:04 CV 1746(MRK), 2006 WL 1806179, at *3 (D. Conn. June 28, 2006) (discussing *Garcia*). However, this Court does not reach that question because it dismisses Ms. Chisholm's claims as time-barred.

6

Statutes of limitations "are often intended to foreclose the potential for inaccuracy and unfairness that stale evidence and dull memories may occasion . . . ." *Kruelski v. Conn. Super. Ct.*, 316 F.3d 103, 111 (2d Cir. 2003) (quotation marks omitted). They "protect interests in reliance and repose, guard against stale demands, and limit the circumstances in which a reviewing court can grant relief . . . ." *In re Enter. Mortgage Acceptance Co., LLC Sec. Litig.*, 391 F.3d 401, 409 (2d Cir. 2004) (internal citations and quotation marks omitted). While a statute of limitations defense is most often pleaded as an affirmative defense and may require a factual inquiry beyond the face of the complaint, a defendant may raise the statute of limitations in a Rule 12(b)(6) motion "[w]here the dates in a complaint show that an action is barred by a statute of limitations . . . ." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989), *cited favorably in McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see McCarty v. Derivium Capital, LLC*, No. Civ. 303CV651 (MRK), 2006 WL 413258, at *2 (D. Conn. Feb. 21, 2006). That is the case here. The events Ms. Chisholm describes in her complaint occurred in 2001, five years prior to the filing of her Complaint on December 5, 2006. As will be discussed below, virtually all of Ms. Chisholm's claims are time-barred. Furthermore, Ms. Chisholm does not allege any circumstances in her Complaint that would permit the tolling of the limitation periods for these claims. *See OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, No. 3:06cv1850 (MRK), 2007 WL 2480362, at *8-*14 (D. Conn. Aug. 30, 2007) (discussing tolling doctrines). Indeed, the Court notes that Ms. Chisholm clearly was aware of the alleged activities that underlie her claims long before the filing of this suit in 2006, since she filed a similar lawsuit on February 5, 2003. *Chisholm v. Medicare, Dep't of Soc. Servs.*, No. 3:03cv00442 (SRU), slip op. at 1 (D. Conn. Mar. 18, 2004) (dismissing action without prejudice).

Title VI of the Civil Rights Act of 1964, Title II of the ADA and 42 U.S.C. § 1983, like many federal civil rights statutes, do not contain a specific statute of limitations. Where that is the case, the Supreme Court has instructed courts to borrow the most appropriate state limitations period. *See Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). What statute of limitations applies to § 1983 claims is well settled. The Second Circuit has long held that such claims are subject to Connecticut General Statutes § 52-577, which provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." *Williams v. Walsh*, 558 F.2d 667, 670 (2d Cir. 1977); *see Schwartz v. Plainville*, 483 F. Supp. 2d 192, 194 (D. Conn. 2007).

It would appear that the Title VI claims are also governed by Connecticut's three-year limitation period. Suggesting as much, in *Morse v. University of Vermont*, the Second Circuit acknowledged that "[i]n actions brought under Title VI of the Civil Rights Act, on which [§ 504 of the Rehabilitation Act] was modeled, the federal trend is to look to the statute of limitations used in analogous federal discrimination actions such as those brought under 42 U.S.C. §§ 1981 and 1983." 973 F.2d 122, 126-127 (2d Cir. 1992) (internal citation omitted). The court then went on to hold that New York's personal injury statute of limitations applied to claims bought under the Rehabilitation Act, 29 U.S.C. § 794(a). The Rehabilitation Act provides that remedies for violations of that act are the same as for violations of Title VI . *Id.* § 794a(a)(2). In light of *Morse*, it would follow that Title VI claims should be governed by the three-year limitations period provided by § 52-577. *See Al-Haideri v. Trs. of Columbia Univ.*, No. 07 Civ. 106(LTS)(DCF), 2007 WL 2187102, at *2 (S.D.N.Y. July 26, 2007) (applying New York's personal injury statute of limitations to Title VI claim); *Stewart v. N.Y. City Transit Auth.*, No. 03 Civ. 10329, 2006 WL 270100, *8 (S.D.N.Y. Feb.

6, 2006) (stating that three-year limitations period for personal injury actions governs claims under Title VI); *Carter v. Univ. of Conn.*, No. 3:04cv1625 (SRU), 2006 WL 2130730, at *2 (D. Conn. July 28, 2006) (holding that § 52-577 applies to Title VI claims); *Benzo v. N.Y. State Div. of Human Rights*, No. 95 Civ. 5362, 1997 WL 37961, *6 (S.D.N.Y. Jan. 31, 1997) (applying three-year personal injury limitations period to Title VI claims). Further, in *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (per curiam), the Second Circuit applied the limitations period of a state personal injury statute to claims brought under Title IX of the Educational Amendments of 1972, which was based upon Title VI. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 694-98 (1979) (stating that Congress intended that Title IX would be interpreted and applied as Title VI has been). Therefore, the Court concludes that the three-year limitations period of § 52-577 also applies to the claims Ms. Chisholm has asserted under Title VI of the Civil Rights Act of 1964.[8]

Which statute of limitations applies to Ms. Chisholm's ADA Title II claims is somewhat more complex and presents a question that has yet to be addressed by the Second Circuit. One of the two following limitation periods might govern: the three-year time bar of Connecticut General

---

[8] It bears noting that some courts have applied the limitation periods found in state anti-discrimination statutes, where they exist, to claims asserted under federal discrimination laws. For example, in *Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222, 225 (4th Cir. 1993), the court held that because Virginia had passed a state anti-discrimination statute that was identical to the federal Rehabilitation Act, the statute of limitations contained in that statute was most analogous and should be applied to the Rehabilitation Act claims. *Id.* ("Given that the Virginia Act is modeled after Rehabilitation Act, we break with the conclusions of the other circuits to apply a personal injury statute of limitations."); *see also Southerland v. Hardaway Mgmt. Co.*, 41 F.3d 250, 257-59 (6th Cir. 1994) ("[*Wilson*] did not mandate that in the absence of a state statute modeled upon the federal provision, courts should default to the state statute of limitations for personal injury actions.") (citing with approval the reasoning in *Wolsky*). In that regard, the Court notes that Connecticut General Statutes § 46a-102 establishes a two-year statute of limitations for claims brought pursuant to Connecticut's discrimination statutes. Ms. Chisholm would thus not be helped if the Court were to follow the reasoning of *Wolsky*.

Statute § 52-577 or the four-year limitations period set forth in 28 U.S.C. §1658. The Court need not, and therefore does not, decide which of these periods applies because Ms. Chisholm's claims would be barred under either approach.

As already noted, where a federal statute is silent as to the applicable statute of limitations, courts are to borrow the most appropriate state limitations period. *See Wilson*, 471 U.S. at 266-67. However, there is some debate whether federal legislation makes the *Wilson* rule inapplicable to claims brought under Title II of the ADA. Section 1658 of Title 28, enacted on December 1, 1990, provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." Because Title II of the ADA became effective on January 26, 1992, some courts have suggested that § 1658's four-year period might apply to Title II claims. *See, e.g.*, *Holmes v. Tex. A & M Univ.*, 145 F.3d 681, 686 (5th Cir. 1998); *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 380-83 (2004) ("The history that led to the enactment of § 1658 strongly supports an interpretation that fills more rather than less of the void that has created so much unnecessary work for federal judges.") (holding that § 1658 applies to § 1981 claims).

Other courts, particularly those within this Circuit, have decided otherwise. Those courts reason that the Second Circuit has consistently applied states' personal injury limitation periods to civil rights violations, *see, e.g.*, *Morse*, 973 F.2d at 126-127; *Williams*, 558 F.2d at 670, and that Congress tied the "remedies, procedures, and rights" of Title II to those under the Rehabilitation Act, 42 U.S.C. § 12133, which, as discussed above, are governed by personal injury statutes of limitations. *See Morse*, 973 F.2d at 126-127; *see also Scaggs v. N.Y. Dep't of Educ.*, No. 06-CV-0799 (JFB)(VVP), 2007 WL 1456221, at *9 (E.D.N.Y. May 16, 2007) (applying New

10

York's three-year statute of limitations, not § 1658's four-year period, to ADA claims); *Duprey v. Conn. DMV*, 191 F.R.D. 329, 341 (D. Conn. 2000) (noting argument for § 1658, but nonetheless deciding to apply § 52-577 to Title II claims because of "the well-established precedent in this Circuit that has repeatedly upheld application of Connecticut's three-year statute of limitations to federal civil rights cases"); *Smith v. Masterson*, No. 05-CV-2897 (RWS), 2006 WL 2883009, at *9 (S.D.N.Y. Sept. 29, 2006) (applying three-year period to ADA claims); *accord Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1409-10 (11th Cir. 1998) (applying states' personal injury statute of limitations to claim brought under Title II of the ADA); *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551 (7th Cir. 1996) (applying states' personal injury statute of limitations as the most analogous limitations period for Title II and Title III ADA claims). Fortunately, this Court does not need to resolve this issue to decide this case because, as discussed below, Ms. Chisholm's claims are barred regardless whether a three- or four-year period applies.

"Federal law governs the question of when a federal claim accrues notwithstanding that a state statute of limitations is to be used." *Morse*, 973 F.2d at 125. Ms. Chisholm's claims under §1983, Title VI of the Civil Rights Act of 1964, and Title II of the ADA accrued "when [she knew] or [had] reason to know of the harm," with "the proper focus [being] on the time of the discriminatory act." *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). Because Ms. Chisholm learned of United's and DSS's alleged actions in 2001, her cause of action against them accrued at that time. Therefore, depending on which statutory period applies, the statute of limitations ran on her claims in 2004 or 2005, at least one year before she filed this action.

Ms. Chisholm's RICO claims are also time-barred. RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156

(1987) (borrowing the statute of limitations from the Clayton Act, 15 U.S.C. § 15b, and finding that the appropriate statute of limitations in civil RICO actions is four years); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988) (finding that a four-year period applies to RICO claims regardless of predicate acts). RICO claims begin to run when a plaintiff discovers or should have reasonably discovered the injury. *See Rotella v. Wood*, 528 U.S. 549, 558 (2000) (tying the accrual of RICO claims to point of injury or its reasonable discovery, and not the plaintiff's reasonable discovery of a pattern); *Bankers Trust*, 859 F.2d at 1102 (holding that RICO claims are governed by discovery of injury accrual rule). As recited above, Ms. Chisholm's claims accrued in 2001, when she learned of United's and DSS's alleged actions, and the statute of limitations ran on her claim in 2005, about one year before she filed this action. Ms. Chisholm does not contend otherwise.

Ms. Chisholm's state-law claims alleging fraud, unfair trade practices, invasion of privacy, conspiracy, and the torts of abuse, neglect, cruelty and reckless endangerment are also all subject to Connecticut's three-year period for torts under Connecticut General Statute § 52-577. *Giuletti v. Giuletti*, 65 Conn. App. 813, 833 (2001) (stating that § 52-577 applies to fraud claims); *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 128 (1982) (describing invasion of privacy as a tort); *Beizer v. Goepfert*, 28 Conn. App. 693, 702 (1992) (noting that conspiracy to defraud is generally classified as a tort claim). To the extent that Ms. Chisholm's Complaint should be construed to include claims under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42a-110 *et seq.*, those claims also are subject to a three-year limitations period. *See Lees v. Middlesex Ins. Co.*, 219 Conn. 644, 653 (1991) (stating that CUTPA claims are subject to Conn. Gen. Stat. § 42-110g(f)'s three-year time bar), and thus are time-barred.

Finally, although Ms. Chisholm's FOIA claims are not barred by the relevant statutes of

limitations, they suffer from other fatal flaws. Insofar as she asserts the claim against United, her claim is barred because FOIA does not apply to private defendants. *See Connecticut Humane Soc. v. Freedom of Info. Comm'n*, 218 Conn. 757, 765 (1991). And insofar as DSS is concerned, FOIA does not give rise to a private cause of action for money damages. *See Pane v. Danbury*, 267 Conn. 669, 673 (2004). If Ms. Chisholm would like to pursue her FOIA claims against DSS, Ms. Chisholm should contact the Connecticut Freedom of Information Commission, which should be able to provide her with information about how to pursue a FOIA claim against a state agency.

**IV.**

The Court GRANTS the Motions to Dismiss of the United of Omaha Life Insurance Company and the State of Connecticut, Department of Social Services, [docs. ## 59, 61, 69] and DENIES AS MOOT United's request for dismissal in its Notice of Partial Non-Compliance [doc. # 68] and its Motion to Dismiss dated September 26, 2007 [doc. # 70]. **The Clerk is directed to dismiss all claims against all defendants and close this file.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: September 28, 2007**.